GIRTMAN BROTHERS AS PARTNERS, *Plaintiffs in Error*, v.
E. L. EATON, *Defendant in Error.*

1. In an action for personal injuries caused by alleged negli-
   gence in the loading or driving of a wagon on a street, the
   burden is upon the plaintiff to prove the injuries to have
   been received as a proximate result of the defendant's negli-
   gence as alleged.

2. In an action between individuals for a negligent injury, if
   the legal effect of the evidence is to show a lack of the
   alleged negligence or to show contributory negligence by
   the plaintiff, there can be no recovery.

3. An examination of the evidence discloses no actionable negli-
   gence by the defendants or their employees, and judgment
   for the plaintiff is reversed.

Appealed from the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the
court.

*Price* & *Railey,* for Plaintiffs in Error;

*Hudson* & *Boggs,* for Defendant in Error.

WHITFIELD, C. J.—Eaton brought an action to recover
damages for personal injuries alleged to have been re-
ceived because of the negligence of the servants of Girt-
man Brothers by being struck in the face by an iron rod
projecting from the side of a wagon of the defendants
while the plaintiff was going in the opposite direction by
the side of the wagon riding on a bicycle in a city street.

A demurrer to the declaration was overruled and trial
was had on a plea of not guilty and special pleas of con-

tributory negligence and intervening cause. Judgment was rendered for the plaintiff and the defendant took writ of error.

The declaration does not appear to be subject to the demurrer, and if the evidence is insufficient to sustain the verdict the other assignments of error need not be considered.

In this case there are no statutory presumptions and the burden is upon the plaintiff to prove the injuries to have been received as a proximate result of the defendant's negligence as alleged. If the plaintiff contributed proximately in any appreciable degree to the injury he cannot recover. If the legal effect of the evidence is to show a lack of negligence as alleged on the part of the defendant, or to show contributory negligence on the part of the plaintiff there can be no recovery.

The evidence affecting the liability of the defendant for damages is as follows: The plaintiff testified: "As I was going down town I saw the delivery wagon belonging to J. D. Girtman and G. C. Girtman, the defendants herein, approaching me from the opposite direction, going in the direction of the Miami River. When I first saw the wagon I did not see any iron rod; I saw a negro driving the wagon and as I got close to the wagon I noticed there were some Indians in the wagon, I do not know how many. The wagon was traveling south of the center of 12th street and in about three or four feet of a street railway line. I endeavored to pass between the wagon and the street railway line. There was ample room for me to pass if the wagon had had nothing projecting from it. The road was a little rough adjacent to the street railway line and I was compelled to look down toward the ground in passing. After I had passed the front wheel, and before reaching the rear wheel, I

was struck in the face under the eye by something that knocked me off my bicycle and temporarily blinded me. The place where I was struck was so near my eye that it caused the eye to fill with blood and to immediately swell so that I could not see; neither could I see from the other eye on account of the sympathy between the eyes. I got up from where I had fallen and went over on the south side of the street. I did not see what it was that struck me; did not see anything that projected from the wagon before I was struck; was not looking for anything projecting from the side of the wagon. After I was struck the wagon stopped and the driver came up to me and spoke to me, said that I had run into an iron rod on the wagon and that he had told them at the store not to load said rod on the wagon that way. I do not know how the rod was projecting from the wagon at the time I was struck. I simply know that I was struck after I had passed the front wheel and from the manner in which the wound was inflicted it seemed to me that the rod projected from the wagon backward and outward in such a manner that one end of it extended out from the wagon between the front wheel and the rear wheel. I passed the wagon on the right hand side, the wagon being at my left. I did not see how the wagon was loaded, never saw anyone loading it; did not see the iron rod at all before I was injured and have never seen it until this day."

Mr. P. O. Gautier testified: "I saw Mr. Eaton immediately after he received an injury from being struck by an iron rod. His condition was very bad and he was bleeding and seemed to be in great agony from the wound received in his eye. He was midway between the curb stone and Girtman's wagon. I saw a wagon of Girtman Bros. at or about the place where E. L. Eaton was hurt.

I saw the iron rod on the wagon, the same was some-what cross-wise in the wagon, protruding out in front of the wagon several feet. I did not notice who was driving the wagon. Someone off of Girtman's wagon approached Mr. Eaton and said something about his injuries but I could not understand just what was said. I asked Eaton where he was hurt and how, and he said: 'That iron rod on Girtman's wagon struck me.' I asked him if he was able to get home and he said 'he thought he could and for me to hurry and get his bicycle and get a doctor quick,' which I did."

Cross-examination: "I was near the bridge on 12th street. The road was in good condition where I found Mr. Eaton. I don't know who was driving the wagon, there was an Indian or two in the back part of the wagon. There was not any Indian holding any iron rod when I noticed them. The iron rod simply seemed to be loaded on the wagon protruding way out in front. I saw an Indian, as here before stated, the rod was protruding out of the front of the wagon on the south side of the horse several feet. I did not notice the rod protruding out of the back of the wagon."

Mr. L. S. Clopton for the defendant testified: "I loaded the wagon which Mr. Eaton claimed was conveying the iron rod with which he collided. At the time the wagon was loaded no iron rod was placed therein. The wagon was a very tall wagon with side boards all around which extended from $2\frac{1}{2}$ to 3 feet above the floor. The wagon was loaded with groceries and supplies for the Indians. At the time the wagon left the store of Girtman Bros., for whom I was working, it was properly loaded and there was nothing in the wagon that protruded or projected out of the wagon on either side or in front thereof. As the wagon was pulling away I saw an Indian named

———— ———— carrying a rod in his hand, about 8 or 10 feet long, jump in the back end of the wagon. He placed the iron rod at that time on top of the merchandise contained in the wagon. At that time the iron rod protruded out behind the wagon about two feet; it did not protrude out in front, neither did it protrude on either side. The rod was so high above the road, on account of the height of the wagon, and on account of the load, that the wagon contained, that a man could easily have ridden a bicycle under the load at the end of the wagon without in any way coming in contact therewith. The last I saw of this wagon the Indian was riding in the back and the rod was lying on top of the wagon in the manner above designated. I did not see but one Indian get in the wagon, though I understood another Indian got in down near the railroad. The iron rod which the Indian had in his hand was a straight rod about 3-8 inch thick and about 10 or 12 feet long. One Tom Johnson was driving the wagon. I do not think he knew the Indian got in as he did not look around and the Indian did not say anything. It appeared to me that the rod was safely stored on top of the merchandise and in such a manner that no one could be injured thereby at the time the wagon passed out of my sight."

Tom Jackson for the defendant testified: "I was working for Girtman Bros. in 1906 at the time Mr. E. L. Eaton was injured. At that time I was driving their delivery wagon. When the wagon left the store, just before Mr. Eaton was injured, there was no iron rod in the wagon. The wagon was loaded with groceries up about level with the top of the sides. The wagon was very high from the road and the seats raised from two to three feet above the floor of the wagon. The entire body of the wagon was full and there was nothing in the

wagon that protruded from or projected over the sides, either in front, behind or out on either side at the time the wagon left the Girtman store. I do not know when the Indian got on the wagon. I did not see either one of them or hear them until Mr. Eaton was hurt. The first thing I knew the Indian picked up the rod and punched me in the back with it and pointed toward Mr. Eaton who was lying in the road apparently injured. Up to that time I did not know that any Indian was in the wagon or that the iron rod was in the wagon and I did not know how Mr. Eaton had been injured until I went to him. I did not see the Indian, pick up the rod. When I saw him he had it in his hand and I did not see him until after he had punched me in the back with the rod. I got out of the wagon and went to Mr. Eaton. I did not say anything to him that I remember. I did not tell him that I told them at Girtman's store not to put that iron rod in the wagon or make any statements of that nature. Mr. Eaton appeared to be suffering greatly when I reached him. Several people came out immediately. Someone sent for a doctor. Mr. Eaton said he was able to go home and he went. At the time the injury occurred 12th street, upon which I was driving, was badly torn up on acount of a street railway line that had been constructed along said road. I was going west and was on the north side of said street. The street runs east and west. There was only a small portion of said street rocked north of said street railway and that portion was about 20 feet wide. When I saw Mr. Eaton coming and when he attempted to pass me I was on the extreme right hand of said road; in fact was traveling so that the right hand wheel of my wagon was out in the sand and the left hand wheel was on the rock road. If I had gone any further over the horse which I was driving would not

have been capable of pulling the load. The street car line in the condition that it was then blocked most all the south side, or left hand side of the public road. Excavations had been made in the road to lay ties and the dirt had not been filled in. The dirt was piled around the end of the cross-ties. There was possibly some 6 or 8 feet between the street car line and the south side of the road. It might have been possible for a wagon to travel on that side but would have been difficult to get over. All the travel at that time was on the rock road lying north of the street car line, all of which was north of the center of the public road. I was entirely north of the center of the public road and on the right hand side of the center of the public road at the time Mr. Eaton was injured. There was between 4 and 6 feet between the wagon that I was driving and the end of the cross-ties. I considered that Mr. Eaton had plenty of room to pass on his bicycle; I did not know anything about the iron rod being in the wagon or in the hands of the Indian and had absolutely no knowledge of it until after Mr. Eaton had been hurt."

Mr. J. D. Girtman for the defendants testified: "I am a member of the firm of Girtman Bros. I had worked at my store during the early morning and about eleven o'clock drove out to my grove. I was present when the Indians were buying their groceries and supplies but was not present when they were loaded into the wagon. I did not know that any Indian had got into the wagon or that any iron rod had been placed therein until I heard that E. L. Eaton had been injured and that he claimed to have run into a rod supposed to have been carried in my wagon. After the injury occurred I went to the place where it occurred and examined the lay of the ground. A street railway line had recently been built which took

up the south side of the street. I measured the distance to the end of the cross-ties from the side walk on the south and found it to be about 6 feet from the side walk. The side walk was about 10 feet wide. The ties were 10 or 12 feet long and the dirt and rock had been dug up, making an excavation for the ties and had been piled around the end of each of them. There was a rock road about 20 feet wide, all of which lay on the north side of the center of 12th Street, and all of which lay on the right hand side of the center of 12th Street. On the north side of said rock road the sand was deep. The street at that time had not been graded. If the driver had driven off the rock road into the sand the horse that he was driving would not have been able to pull the load. He might have driven so that two wheels on the right hand side of the wagon were in the sand and the other two wheels on the rock road, as he claimed he did, and been able to pull the load, but if he had driven off the rock road the horse would not have been able to pull the load which he was then drawing. In the condition that the street was at that time it would have been impossible for the driver to have been driving the wagon on the left hand side of 12th Street or south of the center of 12th Street."

It is the duty of the court in considering the motion for new trial on the ground that verdict is not supported by the evidence to determine whether the evidence is legally sufficient to sustain the finding.

If the evidence does not show negligence of the defendant's servants that proximately caused the injury, or if contributory negligence appears the judgment must be reversed.

Mr. Eaton testifies that he was struck by something projecting from the wagon as he endeavored to pass be-

tween the defendant's wagon and the street car track; that there was ample room for him to pass if the wagon had had nothing projecting from it; that the road was a little rough adjacent to the street car track and he was compelled to look down towards the ground in passing; that he did not see the iron rod before he was injured.

Mr. Gautier testified that, (apparently after the injury) he saw the iron rod on the wagon; it was somewhat crosswise in the wagon, protruding out in front of the wagon several feet; the iron rod simply seemed to be loaded on the wagon protruding way out in front; there was an Indian or two in the back part of the wagon. No Indian was holding the iron rod when he noticed them.

This evidence does not show actionable negligence on the part of the defendant. It is not negligence *per se* for an iron rod in a wagon to protrude from the wagon as it passes along the street.

Mr. Clopton for the defendant testified that he loaded the wagon and that no iron rod was placed thereon; that at the time the wagon left the store it was properly loaded and there was nothing in the wagon that protruded or projected out of the wagon on either side or in front thereof; that as the wagon was pulling away, he saw an Indian carrying a rod in his hand about eight or ten feet long, jump in the back end of the wagon; that the last he saw of the wagon, the Indian was riding in the back and the rod was lying on top of the merchandise in the wagon and protruded out behind the wagon about two feet; that it did not protrude out in front, neither did it protrude on either side; that it appeared to him that the rod was safely stored on top of the merchandise in such a manner that no one could be injured thereby

as the wagon passed out of his sight; that he saw only one Indian get in the wagon; that he does not think the driver of the wagon knew the Indian got in, as he did not look around and the Indian did not say anything.

Tom Jackson, the defendant's driver, testified that when he left the store there was no iron rod in the wagon and there was nothing in the wagon that protruded from or projected over the sides, either in front or out or either side; that he did not know when the Indian got on the wagon, he did not see either one of them until Mr. Eaton was hurt.

Negligence of the defendant's servants does not appear, but on the contrary there is evidence that ordinary and reasonable care was exercised by them. If the plaintiff was not negligent in not observing the protruding iron rod before it struck him, the driver apparently did not know of the presence of the iron rod on the wagon and Mr. Clopton, who saw the Indian get on the rear of the wagon with the iron rod had no reasonable ground to suppose the presence of the Indian and the rod on the wagon would cause an injury to a bicycle rider on the street.

The driver denies that he said to Mr. Eaton "that he had told them at the store not to load said rod on the wagon in that way;" and one witness besides the driver testified that no iron rod was put on the wagon at the store.

The condition of the street was as noticeable to the bicycle rider as to the wagon driver, and each was required to exercise due care for the safety of himself and others in using the streets.

On the evidence in the transcript the negligence of the defendant does not appear.

The judgment is reversed and a new trial awarded.

TAYLOR, SHACKLEFORD, COCKRELL AND HOCKER, J. J., concur.